DR. HERBERT J. GROVER, State Superintendent Department of PublicInstruction
You have sought my opinion on the following questions relating to section 118.12(1), Stats.:
 1. Is it a violation of § 118.12(1)(a) for a teacher to distribute advertising material to students offering books and periodicals for sale to students when:
 a. the books or periodicals are not used for instruction in the schools, or
 b. the distributed material has been approved by the school board or school administration in order to promote reading activities by students outside the classroom?
 2. Is it a violation of § 118.12(1)(a) for a school administrator or school employe to arrange for:
 a. students to rent from a private company graduation caps and gowns to be used in the school's graduation ceremony?
 b. the in-school sale of graduation announcements, class rings, or other school jewelry to students?
 c. students to have their yearbook pictures taken by a particular photographer, who supplies film and photographic *Page 90 
equipment to the school's newspaper and journalism classes?
 d. students to sell candy or other food products to the public where the proceeds go to a school program, such as the school band?
 3. Is it a violation of § 118.12(1)(a) for a school employe who develops and owns an educational computer program to:
 a. sell the program to the school district in which she/he is employed? What if the employe has no involvement in the district's decision to buy the program?
 b. sell the program to a cooperative educational service agency (CESA) which is located in and serves the same area as the employing school district?
 c. sell the program to students as a "study aid"? What if the "study aid" is not used by any of the employe's students?
 4. Is it a violation of § 118.12(1)(a) for a teacher to sell items which may be used as school books, supplies or equipment during the summer vacation period?
5. Who is responsible for enforcing § 118.12?
 6. Would violations of § 118.12(1)(a) also be considered criminal conduct under the provisions of either § 946.12, Misconduct in public office or § 946.13, Private interest in public contract prohibited?
My general answers, which will be elaborated upon, are that section 118.12(1)(a) applies only to materials and items that are or reasonably could become part of the instructional programs of a school district; that enforcement authority usually lies with the school board president for the district: and that violations of section 118.12(1)(a) could also constitute violations of sections 946.12 and 946.13.
Section 118.12(1) reads as follows:
 (a) Within the school district of his or her jurisdiction or employment, no school teacher, agency administrator or employe, school district administrator or other school employe connected with any public school may act as an agent or solicitor for the sale of school books, school supplies or school equipment, or *Page 91 
solicit or promote such sales to individuals or the school district or receive any fee or reward for any such sales.
 (b) Any person violating this subsection shall forfeit not less than $50 nor more than $200 for each offense and may be removed from office therefor.
The broad purpose behind this statute was described by one of my predecessors. In 12 Op. Att'y Gen. 72 (1923), it was stated that "[t]he purpose of the statute is manifestly to prevent persons connected with the public school system from having their judgments warped by financial interest in the sale of school supplies." Similarly, in 27 Op. Att'y Gen. 267, 268-69 (1938), it was stated:
 From the wording of the statute taken as a whole, it is apparent that at the time of the enactment thereof the legislature recognized that the persons named therein might be in a position to take an unfair advantage either of the school or of the students attending such a school and it was to prevent such an abuse that the statute was enacted.
The key to answering the majority of your questions lies in the proper interpretation of the phrase "school books, school supplies or school equipment." As you correctly point out in your request, the phrase prior to 1961 read "school books, maps, charts, school library books, school furniture, apparatus or stationery." In 1961 this language was changed to read, as it does currently, "school books, school supplies or school equipment." See ch. 253, Laws of 1961. The drafting record for chapter 253, Laws of 1961, contains no explanation for the change. In fact, the drafting file seems to indicate that the Legislature was focusing only upon the class of persons to whom section 118.12(1)(a) (then, section 40.93) would apply. In my opinion, then, the reworking of the phrase "school books, maps, charts, school library books, school furniture, apparatus or stationery" was of little consequence. The old phrase was perhaps more explicit and more obviously applicable only to items that are tied to a school's instructional process. However, in the absence of any legislative history, other than what I have already discussed. I do not believe that the current phrase should be construed any differently. Accordingly, I could interpret the phrase "school books, school supplies or school equipment" to apply only to books, supplies and equipment which are or reasonably could become tied to a school's instructional process. *Page 92 
I.
Applying this definition to subpart (a) of your first question, related to a teacher distributing advertising materials to students offering books and periodicals for sale, it is my opinion that a teacher cannot distribute such materials if the books and periodicals being advertised are or reasonably could become instructional materials within the district. If the books and periodicals are or reasonably could be used in the classroom, or are or reasonably could become part of the collection in a school library or instructional materials center, then they constitute "school books" within the meaning of section118.12(1)(a). Further, the teacher would be "promoting" a sale to "an individual." Even if the teacher did not receive remuneration of any sort, the statute still appears to stand in the way of such advertising. A person cannot "solicit" or "promote" or
"receive any fee or reward." The use of disjunctives suggests that promoting a sale is different than receiving a payment or royalty or bonus for a sale. The statute appears to bar even advocating sales of books and periodicals.
Subpart (b) of your first question asks whether it makes any difference if the materials being advertised have been approved by the school board or school administration in order to promote reading activities by students outside the classroom. In my opinion, a violation of section 118.12(1)(a) would occur whenever a teacher distributes advertising materials relating to books and periodicals which have been approved by the school board to promote outside reading. The reason is that such materials could very well become part of a district's instructional program or part of a district's library collection.
II.
The items set forth in question 2 — caps and gowns, graduation announcements, class rings and other school jewelry, yearbook pictures and candy and other food products sold by students to the public — do not, in my view, constitute "school books, school supplies or school equipment." These items are generally sold on a periodic basis only, are not part of the ongoing curriculum and are not a part of the instructional process within a school district. Thus, in my opinion, section118.12(1)(a) does not apply to these items. *Page 93 
III.
Your third question focuses upon educational computer programs and how they are to be handled under section 118.12(1)(a). As a preliminary matter, I would note that although section118.12(1)(a) uses the terms "school books," "school supplies" and "school equipment," these terms should not be given a technical meaning. In my opinion, the terms were meant to be comprehensive. That is, they were meant to encompass all items which are proper to be used in the instructional process. Computer programs, in my opinion, constitute instructional materials.
Accordingly, in response to subpart (a) of your third question, it is my opinion that if a school district employe or other person specified in section 118.12(1)(a) develops an educational computer program, that person cannot sell the program to the district by which he or she is employed if the program is or reasonably could become part of the district's instructional materials. In further response to subpart (a) of your third question, I do not believe that it makes any difference that the person may not be involved in the district's decision to buy the program. A sale of this nature would still generate a "fee or reward" for the seller, and thus it is clearly prohibited by the statute.
In response to subpart (b) of your third question, selling a computer program to a cooperative educational service agency (CESA) is, in my opinion, a nearly indistinguishable situation, given the agency relationship between CESAs and the districts they serve. Hence, programs should not be sold to the CESA that serves the district by which the seller is employed or with which the seller is connected.
Lastly, you ask in subpart (c) whether it makes any difference if the program is sold as a "study aid." Again, I believe that the guiding principle should be whether or not the program is or could reasonably become part of the instructional process that takes place within the school district. If it is part of the instructional process or reasonably could become so in the future, then in my opinion the educational computer program, however it may be labelled, falls within the parameters of the phrase "school books, school supplies or school equipment." *Page 94 
IV.
Your fourth question asks whether it is a violation of section118.12(1)(a) for a teacher to sell items which may be used as school books, supplies or equipment during the summer vacation period. I find nothing in section 118.12(1) that would lead to a conclusion that sales, solicitation and promotional activities related to books, supplies and equipment used during summer months can be viewed any differently than sales, solicitations and promotional activities relating to materials used during the traditional academic year.
V.
Your fifth question focuses upon enforcement of section118.12(1). In my opinion, enforcement authority lies with the school board president within each district.
The penalty for violating section 118.12(1)(a) is a forfeiture of not less than fifty dollars and not more than two hundred dollars for each offense, and possible removal from office. Section 120.15(4) states clearly that the school district president (the president of a school board) of a common or union district is responsible for prosecuting "any action for the recovery of any forfeiture incurred under chapters 115 to 121 in which the school district is interested." If the school district president has incurred the forfeiture, then section 120.15(4) hands prosecutorial authority to the school district treasurer.
While by its terms section 120.15 applies only to common or union high school districts, the section is also made applicable to city school districts and unified school districts by sections 120.49 and 120.75. These sections specify that the school boards and school officers of city districts and union districts have the same powers and duties as the boards and officers of a common school district. One situation unique to a city district, however, is that if the board president is the one who incurs a forfeiture for violating section 118.12(1)(a), prosecutorial authority then passes to the city treasurer. The reason is that under section 120.48(2) the city treasurer serves as the treasurer of the school board in a city school district.
I would also note that if a person charged with prosecuting violations of section 118.12(1)(a) fails to prosecute within ten days after being requested in writing by an elector of the school district *Page 95 
to do so, any elector of the school district may then prosecute the action. Sec. 118.12(3), Stats.
An action under section 118.12(1)(a) would, in my opinion, be covered by chapter 778. Section 778.01 states that "[w]here a forfeiture imposed by statute shall be incurred it may be recovered in a civil action . . . ." Section 778.02 states that "[e]very such forfeiture action shall be in the name of the state of Wisconsin . . . ." The persons authorized to "prosecute" violations of section 118.12(1)(a), however, may not proceed alone in filing a civil action. In State v. Wisconsin TelephoneCo., 91 Wis.2d 702, 713, 284 N.W.2d 41 (1979), the Wisconsin Supreme Court noted its "disapproval of private persons purporting to bring actions on behalf of the state." In regard to a statutory section which contained the phrase "the person or corporation prosecuting thereof," the court concluded that the phrase cannot be construed to mean that a private person could commence a forfeiture action alone, and thus force the state to become a party. Rather, it must be held to mean that a private person could prosecute in conjunction with the state pursuant to sec. 288.04 [now section 778.04], which provides in part, `In case a portion of any forfeiture shall belong or shall be payable to any person, he may join with the state as a plaintiff; . . .' (Emphasis supplied.)" Wisconsin Telephone, 91 Wis.2d at 713-14. Based upon this case, I conclude that the authority to "prosecute" violations of section 118.12(1)(a) means that the persons given this authority may only make the sworn relation upon which a prosecuting authority of the state bases a forfeiture action; no independent prosecutorial authority exists under section 118.12.
VI.
Your sixth and final question asks whether violations of section 118.12(1)(a) could also constitute criminal conduct under sections 946.12 (misconduct in public office) and 946.13 (private interest in a public contract). In my opinion, violations of section 118.12(1)(a) could constitute violations of the latter statutes.
Both sections 946.12 and 946.13 apply to public officers and public employes. The definitions of the terms "public officer" and "public employe" are set forth in section 939.22(30). A "public officer" is any person "appointed or elected according to law to discharge a public duty for the state or one of its subordinate *Page 96 
governmental units." A "public employe" is any person, not an officer, who "performs any official function on behalf of the state or one of its subordinate governmental units and who is paid from the public treasury of the state or subordinate governmental unit." In my opinion, those categories of persons bound by section 118.12(1)(a) — school teachers, agency administrators or employes, school district administrators or other school employes — easily fall within the definitions of either a public officer or public employe.
An analysis of a predecessor to sections 946.12 and 946.13
supports this conclusion. Section 348.28, Stats. (1953), whose principles were incorporated into sections 946.12 and 946.13 by chapter 696, Laws of 1955, specified that the section applied to, among others, "[a]ny officer, agent or clerk of . . . any school district [or] school board . . . or in the employment thereof." It appears that the Legislature, when adopting sections 946.12
and 946.13, simply condensed the lengthy list down into two general categories: public officers and public employes. There is no indication that school district officers, teachers or other district employes were to be excluded.
Given that the persons described in section 118.12(1)(a) are also covered by sections 946.12 and 946.13, it is conceivable that conduct punishable under section 118.12(1)(a) could be punishable also under the other two statutory sections, depending upon the facts. No double jeopardy problem arises since the penalties under section 118.12 are civil. Double jeopardy problems only arise if a person is subjected to two possible criminal penalties for the same conduct. State v. Roggensack, 15 Wis.2d 625, 633, 13 N.W.2d 389 (1962).
BCL:RCB